IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AFTON LARSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART, Commissioner of ) <br> Social Security, ) <br> ) <br> Defendant. ) | CV 04-6074-CO <br><br> FINDINGS AND <br> RECOMMENDATION |

KATHRYN TASSINARI
ROBERT BARON
Cram, Harder, Wells & Baron
474 Willamette, Suite 200
Eugene OR 97401

    Attorneys for Plaintiff

KARIN IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

1 - FINDINGS AND RECOMMENDATION

DAVID J. BURDETT
Office of General Counsel
LUCILLE G. MEIS
Regional Chief Counsel, Region X
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington   98104-7075

   Attorneys for Defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Afton Larson (Larson) brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 USC § 405(g). The Commissioner's decision should be remanded for further administrative proceedings.

## BACKGROUND

Larson was 58 years old on the date of the Commissioner's final decision. She completed four years of college and worked as a filing clerk, cashier and receptionist. She alleges her ability to work is limited by the residual effects of fracturing her right humerus, which caused "limited range of motion, strength and extreme pain when using arm." Tr. 57.[1]

Larson suffered multiple fractures of the upper right humerus on February 22, 2000. She alleges that she cannot carry items or use her right arm for lifting. She has trouble handling and fingering and develops muscle tightness and pain when using a keyboard. Larson returned to work on a part-time basis. However, on November 27, 2000, she reduced her hours to a level that does

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 6).

not meet the requirements for substantial gainful employment. Larson alleges disability beginning that date.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 404.1520. Larson challenges the fourth step of the ALJ's determination.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 CFR § 404.1520(e), 404.1545; Social Security Ruling (SSR) 96-8p.

At step four the Commissioner must determine whether the claimant retains the RFC to perform work she has done in the past. 20 CFR § 404.1520(e). If her RFC does not preclude her past work, the claimant is not disabled.

The ALJ found that Larson suffered multiple fractures in the right humeral head in the shoulder joint. He determined that she retained the RFC to perform light work, excluding work above shoulder level with the right arm. At step four, he found that Larson retained the RFC to return to her past work as a cashier/receptionist or filing clerk.

3 - FINDINGS AND RECOMMENDATION

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If substantial evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

### I. New and Material Evidence

After the ALJ issued his decision, Larson sought review from the Appeals Council and submitted new evidence including treatment records and a medical source statement from Kenneth Butters, MD, her treating orthopedic surgeon. Tr. 251-53. The Appeals Council reviewed the additional evidence and found that it did not provide a basis for changing the ALJ's decision. The Appeals Council declined to review the ALJ's decision.

Where a claimant is seeking review based on evidence not presented to the ALJ, the regulations direct the Appeals Council to grant such review when the submitted evidence is new, material, and relates to the period on or before the date of the ALJ's decision. 20 CFR § 404.970(b). *See Ramirez v. Shalala*, 8 F3d 1449, 1452 (9th Cir 1993). The new evidence is material if it creates

a reasonable possibility that the outcome of the case would be different. *Booz v. Sec'y of Health & Human Servs*, 734 F2d 1378, 1380-81 (9th Cir 1984).

The Appeals Council's decision declining to review the ALJ's decision is not a final agency action subject to judicial review. 20 CFR § 404.981. However, when the Appeals Council considers materials not seen by the ALJ and concludes that they provide no basis for review of the ALJ's decision, a reviewing court may consider the additional materials when it determines whether substantial evidence supports the Commissioner's decision. *Harman v. Apfel*, 211 F3d 1172, 1180 (9th Cir), *cert denied*, 121 S Ct 628 (2000); *Ramirez*, 8 F3d at 1451-52.

Accordingly, this court reviews the additional materials to determine whether they undermine the evidentiary basis of the ALJ's decision and create a reasonable possibility that the outcome of the ALJ's decision would change. *Booz*, 734 F2d at 1380-81.

Dr. Butters performed a surgical repair of Larson's fractured humerus in March 2000. The pins were removed at six weeks and she underwent an extended course of physical therapy. Six months after surgery, she reported pain with vigorous stretching in physical therapy, but no night pain and no need for pain medications. Tr. 184. In April 2001, Larson continued to have stiffness and limited range of motion in the right shoulder, but experienced no pain within the limits of her range of motion and no night pain. X-rays showed a healed humeral fracture without evidence of avascular necrosis. Tr. 178, 180.

Dr. Butters did not see Larson again for 20 months. The ALJ issued his decision during this interim, on September 27, 2002.

On October 21, 2002, Larson had an MRI of the shoulder which showed marked deformity of the humeral head and evidence of avascular necrosis. Tr. 262. On December 11, 2002, Larson

returned to Dr. Butters care. Dr. Butters found that progressive avascular necrosis had caused marked deterioration of the humeral head in the shoulder joint. He opined that this condition would cause further collapse and greater pain as it progressed. Larson reported that she had experienced pain at a level that was more than a nuisance for about one year. Tr. 259. In March 2003, Dr. Butters performed shoulder replacement surgery. Tr. 255.

On November 17, 2003, Dr. Butters completed the medical source statement Larson submitted to the Appeals Council. Tr. 251-53. He opined that Larson had functional limitations in handling and reaching that were inconsistent with the requirements of her past work as a receptionist and file clerk, as those occupations are described in the *Dictionary of Occupational Titles* (DOT). Dr. Butters' responded in the negative to the question:

> After considering the enclosed job descriptions, and based upon your treatment of Ms. Larson, would it be your opinion that Ms. Larson could have sustained these jobs since November 28, 2000?

Tr. 253.

Dr. Butters' opinion supports the existence of progressively debilitating avascular necrosis with associated collapse of the humeral head in the shoulder joint. The objective medical evidence shows that it had progressed to a condition of marked deformity less than one month after the ALJ's decision. Dr. Butters' opinion would establish that the shoulder deformity resulted in reaching and handling limitations exceeding those in the ALJ's RFC assessment. The progressive nature of the condition suggests that these limitations commenced at some time before the ALJ issued his decision.

This court concludes that the post-hearing evidence is new and material and relates to the period preceding the ALJ's decision. It is reasonably possible that the ALJ's RFC assessment would

be different and that the outcome would change if he considered the new materials. Accordingly, the case must be remanded. *Ramirez v. Shalala*, 8 F3d at 1455.

However, the new materials do not compel an immediate award of benefits as Larson asserts. First, it is not clear from the new materials that Larson would be unable to perform her past work as she actually performed it. A claimant will be found to be not disabled when it is determined that she retains the RFC to perform the actual functional demands and job duties of a particular past relevant job as she performed it, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

Dr. Butters' opinion addresses only Larson's ability to perform her past work based on general job descriptions from the DOT. The Commissioner must consider the new materials, reassess Larson's RFC and determine whether she remains capable of performing her past work.

Second, if the Commissioner determines that Larson cannot perform her past work, she must determine whether Larson retains the RFC to perform other work in the national economy. *Bowen v. Yuckert*, 482 US at 141-420; 20 CFR § 404.1520(e), (f).

Third, it is not clear whether Dr. Butters believed that Larson had the additional limitations for the entire period beginning in November 2000. This is highly unlikely given his relatively mild findings from April 2001. At that time, he advised Larson that avascular necrosis might become evident within 12 months. However, there is no indication in his opinion of the probable onset of the additional functional limitations. If the Commissioner determines that the additional functional limitations are disabling, she would be required to infer the onset of disability in accordance with SSR 82-30.

## II. RFC Evaluation

Larson also asserts error in the ALJ's credibility determination and evaluation of the lay witness testimony. Because the new evidence requires a remand for further proceedings, this court addresses the remaining contentions only to determine whether they compel an immediate award of benefits.

### A. Credibility Determination

Larson contends the ALJ erred by finding her subjective statements about her symptoms less than totally credible. The ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996). The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id. See also* SSR 96-7p.

The ALJ considered appropriate factors and articulated reasons that are supported by substantial evidence in the record. The ALJ did not believe Larson's testimony that she suffers from constant debilitating shoulder pain. The objective medical evidence before the ALJ showed that Larson had limited range of motion in the right shoulder with numbness and tingling down the arm

8 - FINDINGS AND RECOMMENDATION

to the right hand. Her physician opined that she would not be able to perform data entry keyboarding full time due to this. None of the medical source opinions suggested a disabling level of pain. The agency medical consultants opined that Larson would be able to perform medium work, as long as she did not have to use her right arm above shoulder level.

The ALJ noted that Larson did not require medication or any other treatment to alleviate pain during much of 2000 and 2001. The ALJ could reasonably conclude that a person suffering from disabling shoulder pain would seek medical attention to reduce the pain.

The ALJ also believed Larson's activities were inconsistent with her claim of constant debilitating shoulder pain. Larson worked as a volunteer and part-time on-call employee, performed household chores that are typical for a person who is not disabled, worked in her garden and engaged in social activities. The ALJ could conclude that these activities are more consistent with the requirements of light or sedentary work than with complete disability.

The ALJ also noted that Larson is ambidextrous, and can perform many handling and gripping tasks with her left hand. She alleges that the greatest impediment to work is pain in her right shoulder.

The ALJ applied appropriate legal standards and reached conclusions supported by substantial evidence in the record before him. The Commissioner must revisit the credibility determination in light of the new evidence of the collapse of Larson's shoulder. However, nothing in the ALJ's credibility determination requires an immediate award of benefits.

### B. Lay Witness

Larson's husband testified that she must rest occasionally to take pressure off her right shoulder. Family members and others in a position to observe a claimant's symptoms and daily

9 - FINDINGS AND RECOMMENDATION

activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F3d at 918. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996).

Larson argues that the quoted sentence from her husband's testimony shows she cannot work on a sustained basis.

> She gets, you know, limited in the amount of time she can spend doing anything without resting or taking pressure off her shoulder by laying in her reclining bed

Tr. 317.

This court cannot read as much into his statement. He did not identify any functional limitation or describe particular work-related activities that Larson could not do or which might cause her to need rest. Because Larson's complaints derive from her shoulder injury, the ALJ could reasonably conclude that the exclusion of work requiring her to use her shoulder would accommodate the limitations described by Mr. Larson. Accordingly, the ALJ was not required to give reasons for discrediting the testimony.

The Commissioner must revisit this issue in light of the new evidence. However, it does not compel an immediate award of benefits at this juncture.

### **RECOMMENDATION**

Based on the foregoing, the ALJ's determination that Larson did not suffer from a disability should be reversed and remanded for further proceedings consistent with these findings, and a final judgment should be entered pursuant to sentence four of 42 USC § 405(g).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure,

should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this    12    day of April, 2005.

_____/s/_____
John P. Cooney
United States Magistrate Judge